The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Wanda B. Taylor and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Opinion and Award.
***********
The Full Commission finds as fact and concludes as matters of law the following:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over this matter.
3. An employer-employee relationship existed between plaintiff and defendant-employer on November 22, 1995.
4. ITT Hartford Insurance Company was the carrier on the risk on November 22, 1995.
5. All parties have been properly designated, and there is no question as to joinder or non-joinder of parties.
6. Plaintiff alleges to have sustained a compensable injury on November 22, 1995. Plaintiff's average weekly wage will be determined by a Form 22 Wage Chart or similar wage information.
7. The parties stipulated into evidence, without need for further authentication or verification, medical records from the following healthcare providers:
— Shelby Surgical Associates, P. A.;
— Duffy Chiropractic, P. A.;
— Presbyterian Hospital;
— Christopher Madison, M. D.;
— Charlotte Orthopedic Specialists, P. A. (Kenneth Wood, M. D.).
7. The parties also stipulated into evidence the video deposition of James Smith and plaintiff's Employment Security Commission records.
***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter plaintiff was 26 years of age, born December 15, 1971, and was a high school graduate. Plaintiff became employed with defendant-employer, Travis Knit, on November 22, 1995, and approximately one year later became a bagger. As a bagger plaintiff would bag large rolls of cloth, weigh them, and restack them on racks. Each roll of cloth weighed between 20 and 80 pounds with an average roll weighing 50 pounds. Plaintiff bagged approximately eighteen rolls per hour. Plaintiff generally worked an eight-hour shift but had been working twelve-hour days for between one and two months prior to November 22, 1995 in order to meet the production demand. Plaintiff worked six to seven days a week. Plaintiff's duties involved lifting the rolls approximately three to four inches to place them on the scale, lifting them off the scale and placing them on the rack, then taking the entire rack by forklift to a different station.
2. Plaintiff testified that on November 22, 1995, the Wednesday before the Thanksgiving break, at approximately 6:00 p.m., he was preparing to weigh cloth and as he lifted the roll the four or five inches to weigh it he felt a pop and immediate pain in his back and dropped the roll. Plaintiff said he remained bent over and was unable to stand up or walk for several minutes.
3. James Smith testified in his deposition that plaintiff handled over 100 rolls a shift with the rolls weighing from 70 pounds down to 30 or 40 pounds. Mr. Smith also said that he came back to his work station to find the plaintiff "laying over the scale." Mr. Smith said, "What's wrong?" Mr. Smith testified that, "(plaintiff) said he couldn't straighten up. He said he heard something give in his back. It was like a pop." Mr. Smith said he helped the plaintiff back to the office, but was told he could not be present while the employer filled out the accident report. Mr. Smith's testimony corroborates the plaintiff's testimony and the Full Commission finds both to be credible.
4. Plaintiff rested over the four day Thanksgiving weekend, but did not feel any better. Plaintiff saw Dr. Madison on Monday, November 29, 1995, due to low-back pain. Dr. Madison found plaintiff to have spasms and tenderness in the back and prescribed a muscle relaxant. Dr. Madison also gave plaintiff a work restriction limiting plaintiff to eight hours as opposed to the twelve hour shift to see if that would help.
5. When plaintiff did not improve, he returned to Dr. Madison on December 19, 1995 and related what Dr. Madison considered to be a "fairly distressing story." Despite the fact that plaintiff's family doctor had advised plaintiff's employers to limit his heavy lifting and straining job to no more than eight hours at a time, plaintiff indicated that he was pressured by his supervisor to continue working twelve hours a day, to the point of saying that if you can't work twelve hours, he did not have a job and should not return.
6. Plaintiff also related to Dr. Madison that his supervisor told him that he needed to see a chiropractor because medical doctors could not do any good for him. Plaintiff had further indicated that if he kept his job down to eight hours, he could continue to perform as a bagger. However, defendant insisted that plaintiff work the full twelve hours if he wished to remain employed by defendant despite the instructions and work restrictions imposed by Dr. Madison.
7. Dr. Madison also reported during this visit that plaintiff's problem was chronic overuse of his back and "long hours are probably dangerous for some sort of permanent back injury." At plaintiff s request, Dr. Madison scheduled an appointment to consult with a chiropractor.
8. On December 27, 1995, plaintiff did consult with Dr. Joseph Duffy of the Duffy Clinic of Chiropractic Medicine in Cherryville, North Carolina. Plaintiff reported during this visit that he injured his back while "lifting rolls of cloth at work." Dr. Duffy continued to treat the plaintiff on several follow-up occasions, but soon realized that the extent of his injuries were severe; and therefore, plaintiff was referred to Dr. Kenneth Wood of the Charlotte Orthopaedic Clinic.
9. Dr. Kenneth Wood first saw plaintiff on April 9, 1996. Dr. Wood's notes indicated that plaintiff's problems began when he injured his back at work while doing some lifting and bending on the job.
10. Dr. Wood also indicated several times during his deposition that plaintiff indicated that the injury occurred at work while he was lifting a roll of cloth. Dr. Wood testified that except for the on-the-job injury in November, 1995, plaintiff gave no other indication that he had ever had any type of back injury that pre-existed the date of this injury.
11. As a result of his initial examination, Dr. Wood ordered an MRI which detected a "very large disc herniation at L4-5". Dr. Wood scheduled plaintiff for a discectomy on May 27, 1996. Dr. Wood noted at this time that Plaintiff had a large protruding disc under the L5 nerve root. As to the cause of the herniation was a result of degeneration or injury induced, Dr. Wood stated that plaintiff was a healthy, young man, and that a herniation this severe is typically injury induced. In a December 18, 1996 office note, Dr. Wood again stated, "I told him that he clearly had a ruptured disc which in my opinion occurred on the job."
12. The Full Commission finds that the plaintiff's back injury arose in the course of the plaintiff's employment and that the injury was the direct result of a specific traumatic incident of the work assigned.
13. Following a period of follow up treatment and physical therapy, plaintiff was released by Dr. Wood with a 10% permanent disability to the back. Because plaintiff's claim was denied, he has not had the money or ability to obtain a second opinion for the purpose of a PPD rating. Dr. Wood also recommended that plaintiff consult a vocational rehabilitation specialist and try to obtain lighter work because of the severity of his injury.
***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident, as a result of a specific traumatic incident of the work assigned, arising out of and in the course of his employment with defendant-employer on November 22, 1995. N.C. Gen. Stat. § 97-2(6).
2. As the result of plaintiff's injury by accident, plaintiff is entitled to temporary total disability compensation at the rate of $230.00 per week from November 22, 1995 through the present and continuing until further order from the Commission. N.C. Gen. Stat. § 97-29.
3. As the result of plaintiff's injury by accident, plaintiff is entitled to payment for all reasonable medical expenses incurred or to be incurred, which are reasonably required to effect a cure, give relief or tend to lessen the period of disability. N.C. Gen. Stat. § 97-25.
4. Defendants are entitled to a credit for the unemployment compensation received by plaintiff from June 15, 1996 through December 7, 1996. N.C. Gen. Stat. § 97-42.1.
5. Counsel for plaintiff is entitled to a reasonable attorney's fee.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants and specifically the defendant-employer's carrier, ITT Hartford, shall pay plaintiff temporary total disability compensation at the rate of $230.00 per week from November 22, 1995 through the present and continuing until further Order from the Commission. Amounts of temporary total disability compensation which have accrued shall be paid to plaintiff in a lump sum, subject to an attorney fee provided below. The defendants shall pay interest at the rate of 8 per cent per annum from June 3, 1998.
2. Defendants are entitled to a credit for the unemployment compensation received by plaintiff from June 15, 1996 through December 7, 1996.
3. The above-described defendants shall pay all medical expenses incurred or to be incurred, as a result of plaintiff's compensable accident of November 22, 1995 for so long as such treatment may reasonably be required to effect a cure, give relief or tends to lessen plaintiff's disability.
4. A reasonable attorney fee in the amount of twenty-five percent of the compensation benefits due under Paragraph 1 of this AWARD is approved. Of the accrued amount, paid in a lump sum to plaintiff, defendants shall deduct twenty-five percent and forward that amount directly to plaintiff's counsel. For the balance of the attorney fee, defendants shall forward every fourth compensation check directly to plaintiff's counsel.
5. Defendants shall pay the costs.
This 14th day of December 1999.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ CHRISTOPHER SCOTT COMMISSIONER
DISSENTING WITHOUT A WRITTEN OPINION
S/_____________ DIANNE C. SELLERS COMMISSIONER